**SO ORDERED.**

**SIGNED this 24 day of December, 2014.**

_____
**Randy D. Doub**
**United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## NEW BERN DIVISION

**IN RE:**

| | |
|---|---|
| **CYDRIC RANARD HARRIS,** | **CHAPTER 13** |
| **PAMELA RENEE HARRIS,** | **CASE NO. 14-04458-5-RDD** |

**DEBTORS.**

## ORDER

Pending before the Court is the Objection to Confirmation of Plan and Motion to Dismiss filed by the Chapter 13 Trustee on September 5, 2014, the Memorandum of Law in Support of Objection to Confirmation filed by the Chapter 13 Trustee on October 22, 2014, the Response in Opposition to Trustee's Objection to Confirmation and Motion to Dismiss filed by Cydric Ranard Harris and Pamela Renee Harris (the "Debtors") on September 29, 2014, and the Memorandum of Law in Opposition to Trustee's Objection to Confirmation filed by the Debtors on October 28, 2014. The Court conducted a hearing on November 4, 2014 to consider this matter.

## STATEMENT OF THE FACTS

The Debtors filed a voluntary petition for relief under Chapter 13 of Title 11 of the United States Code (the "Bankruptcy Code") on August 4, 2014. Joseph A. Bledsoe, III, was duly appointed as the Chapter 13 Trustee (the "Trustee"). The Debtors filed the required Schedules A

through J, a Statement of Financial Affairs, a master Mailing Matrix, and a Chapter 13 Statement of Income and Calculation of Commitment Period and Disposable Income (hereinafter the "B22C"). After completing Parts I and II of the B22C, the Debtors calculated their household income to be above the median family income in North Carolina for comparably sized households. The Debtors listed a monthly disposable income under 11 U.S.C. §1325(b)(2) of negative $737.57.

To arrive at the monthly disposable income figure of negative $737.57, the Debtors took several deductions including the following expenses:

1.  The Debtors completed Line 25B of the B22C[1] by listing the Average Monthly Payment of $1,357.67 for the Debtors' residence and the Internal Revenue Service (the "IRS") Standard of $885.00. Thus, the Debtors did not deduct anything for net mortgage/rental expense on Line 25B.

2.  The Debtors completed Line 28 by listing the Average Monthly Payment of $162.38 for the 2010 Hyundai Elantra and the IRS Standard of $517.00. Thus the Debtors deducted $354.62 for net ownership/lease expense on Line 28.

3.  On Line 47 for their Future Payments on Secured Claims, the Debtors deducted $162.38 for the 2010 Hyundai Elantra and $1,357.67 for the Debtors' residence.

4. On Line 48 the Debtors deducted $78.76 for Other Payments on Secured Claims representing 1/60th of the cure amount of their prepetition mortgage arrears.

Schedule F shows the Debtors have approximately $113,931.30 in unsecured nonpriority claims. Schedule I shows a combined monthly income of $3,990.82. Schedule J shows average monthly expenses of $2,137.82 leaving a monthly net income of $1,853.00.

The Debtors filed a proposed Chapter 13 plan on August 4, 2014, pursuant to 11 U.S.C. § 1321 (the "Plan").  The Plan proposes to pay $1,853.00 per month for sixty (60) months. The total

---

[1]All references made herein to a "Line" refer to a specific line of Official Form B22C.

amount of Plan payments equals $111,180.00 and consists of $4,064.00 in attorneys' fees. The Plan proposes a zero percent payout to general non-priority unsecured creditors.

The Trustee requests that the Court deny confirmation of the Debtors' proposed Plan, on the basis that the Plan fails to comply with the "projected disposable income" requirement of 11 U.S.C. § 1325(b). Specifically, the Trustee contends that "above median income" debtors, like the Debtors herein, when calculating their Disposable Monthly Income on B22C, are only entitled to deduct the lesser of their actual home and vehicle payments, calculated in accordance with 11 U.S.C. § 707(b)(2)(A)(iii), or the corresponding Local Standards promulgated by the IRS and relevant in the calculation of Disposable Monthly Income under 11 U.S.C. § 707(b)(2)(A)(ii). According to the Trustee, if a debtor's actual home or vehicle payments exceed the IRS Standards, he may deduct additional amounts, over and above the amounts of the IRS Standards, but only upon a showing that such deductions are reasonable and necessary, and as a special circumstance under §707(b)(2)(B).

The Debtors respond that based on the plain language of 11 U.S.C. § 707(b)(2)(A)(i), a debtor's expense amounts include the IRS standard allowances provided under § 707(b)(2)(A)(ii) *and* the secured debt payment under § 707(b)(2)(A)(iii), whichever is greater. In addition, the Debtors contend that their deductions are consistent with Form B22C and its instructions which properly implement the statutory "disposable income" formula for above-median debtors.

The issue before the Court is as follows: whether an "above median income" Chapter 13 debtor, when calculating Disposable Monthly Income pursuant to 11 U.S.C. § 1325(b)(3), is only entitled to deduct from his Current Monthly Income the lesser of the actual home and vehicle payments or the corresponding Local Standards promulgated by the IRS. Based on the holdings and analyses set forth in the Supreme Court decisions *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61,

3

131 S. Ct. 716 (2011) and *Hamilton v. Lanning*, 560 U.S. 505, 130 S.Ct. 2464 (2010) and the objectives of Congress in enacting the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), the Court holds the Debtors are only entitled to deduct from their Current Monthly Income the lesser of their actual home and vehicle payments or the corresponding Local Standards promulgated by the IRS, when calculating Disposable Monthly Income on B22C.

## **DISCUSSION**

In cases where an objection to confirmation has been made by either the trustee or an unsecured creditor the court may not confirm a plan unless:

> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1)(A)-(B).

The Bankruptcy Code defines "disposable income" as "current monthly income"[2] received by the debtor [but not including certain child support, foster care, or disability income] less "amounts reasonably necessary to be expended" for "maintenance or support of the debtor or a dependent of the debtor," business expenditures, and certain charitable contributions. 11 U.S.C. §§ 1325(b)(2)(A)(i) and (ii).  If a debtor's "current monthly income," when multiplied by 12, yields an amount greater than the median state income for the debtor's household size, the amounts "reasonably necessary to be expended" for the debtor's maintenance and support "shall be determined in accordance with subparagraphs (A) and (B) of the [Bankruptcy Code] section 707(b)(2)[.]" 11 U.S.C. § 1325(b)(3).

Section 707(b)(2) sets forth the means test which "supplants the pre-BAPCPA practice of calculating debtors' reasonable expenses on a case-by-case basis, which led to varying and often inconsistent determinations." *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 131 S. Ct. 716, 722, (2011) (citation omitted). "Congress adopted the means test—[t]he heart of [BAPCPA'S] consumer

---

[2]The term "current monthly income" –
        (A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on–
                (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or
                (ii) the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii); and
        (B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent) . . . .

11 U.S.C. § 101(10A).

bankruptcy reforms, and the home of the statutory language at issue here—to help ensure that debtors who *can* pay creditors *do* pay them. [U]nder BAPCPA, debtors [will] repay creditors the maximum they can afford." *Ransom*, 131 S.Ct. at 721. (internal quotations and internal citations omitted) (emphasis in original).

"Under the means test, a debtor calculating his 'reasonably necessary' expenses is directed to claim allowances for defined living expenses, as well as for secured and priority debt." *Id.* at 722. A presumption of abuse arises "if the debtor's current monthly income reduced by amounts determined under clauses (ii), (iii), and (iv)" is greater than a specified level. 11 U.S.C. § 707(b)(2)(A)(i).

Section 707(b)(2)(A)(ii)(I) provides:

The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service [IRS] for the area in which the debtor resides. . . .

*[n]otwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts . . .*

11 U.S.C. § 707(b)(2)(A)(ii)(I) (emphasis added).

Section 707(b)(2)(A)(iii) provides for a deduction of the "debtor's average monthly payments on account of secured debts" and is "the total of all amounts scheduled as contractually due to secured creditors in each month of the sixty months following the date of the filing of the petition," divided by sixty. 11 U.S.C. § 707(b)(2)(A)(iii). This Section also provides for a deduction of other payments on secured claims representing 1/60th of the cure amount of the prepetition arrears. *Id.*

> The National and Local Standards referenced in [Section 707(b)(2)(A)(ii)(I)] are tables that the IRS prepares listing standardized expense amounts for basic necessities. The IRS uses the Standards to help calculate taxpayers' ability to pay overdue taxes. See 26 U.S.C. § 7122(d)(2). The IRS also prepares supplemental guidelines known as the Collection Financial Standards, which describe how to use the tables and what the amounts listed in them mean.

*Ransom*, 131 S. Ct. at 722.

The National Standards are standardized expense amounts the IRS deems to be reasonable expenditures for food, housekeeping supplies, apparel and services, personal care products and services, miscellaneous expenses, and out-of-pocket health care expenses. The Local Standards establish expense standards for housing and transportation expenditures. The Local Standards for housing expenses consist of a separate allowance for housing, *per se*, ("Housing") and a separate allowance for utilities ("Utilities").  The Housing allowance includes expenditures for mortgage or rent, property taxes, interest, insurance, maintenance, and repair.    Internal Revenue Manual §§ 5.15.1.9 (Oct. 2, 2012), http://www.irs.gov/irm/part5/irm_05-015-001.html. The Utilities allowance includes expenditures for the cost of gas, electric, water, heating oil, garbage collection, residential telephone and cell phone service, and internet. *Id.* The Housing and Utilities allowances are determined based on the debtor's household size, and by his state and county of residence.

The Local Standards for transportation expenses consists of separate allowances for "Ownership Costs" and vehicle "Operating Costs." *Ransom*, 131 S. Ct. at 725. The "Ownership Costs" "encompasses the costs of a car loan or lease and nothing more." *Id.* The "Operating Costs" category accounts for other expenses associated with maintaining a car and includes payments for "[v]ehicle insurance, . . . maintenance, fuel, state and local registration, required inspection, parking fees, tolls, [and] driver's license." *Id.* (citing to Internal Revenue Manual §§ 5.15.1.7 and 5.15.1.8 (May 1, 2004)).  A person who owns a car free and clear of any encumbrances is only entitled to

7

claim the "Operating Costs" deduction. *Id.* at 725-26.  That person is not entitled to also claim the "Ownership Costs" deduction, because that allowance is for the separate costs of a car loan or lease. *Id.*; Internal Revenue Manual § 5.15.1.7(b) (stating that "if a taxpayer has a car, but no car payment only the operating cost portion of the transportation standard is used to figure the allowable transportation expense.").

The Trustee does not challenge the deductions claimed by the Debtors under the National Standards or under the Local Utilities or Local Operating Costs allowance. Only the deductions taken under the Local Car Ownership Costs allowance and the deduction taken under the Local Housing allowance are at issue here.

### I. Debtors' Housing Expense of $1,357.67 is *Greater Than* the IRS Local Housing Standard of $885.00.

The Debtors take a deduction on Line 47(b) for the average monthly payment of $1,357.67 secured by their residence.  This amount exceeds the amount of the IRS Local Standard for the Housing allowance as shown on Line 25B(a) of $885.00.  Debtors also deduct $78.79 on Line 48 for other payments on secured claims representing 1/60th of the cure amount of their prepetition mortgage arrears.

The Trustee contends that when a debtor's monthly payments exceed the IRS Local Standards, as is the case here, the IRS Local Standards should operate as a "cap" on the amount a debtor may deduct.  Accordingly, the Trustee contends the Debtors should be allowed to only deduct the IRS Local Standard of $885.00.  The Trustee contends the Debtors may, however, deduct additional amounts, over and above the amounts of the Standards, but only upon a showing that such

deductions are reasonably necessary, and as a "special circumstance" under 11 U.S.C. § 707(b)(2)(B).

The Court's "interpretation of the Bankruptcy Code starts 'where all such inquiries must begin: with the language of the statute itself.'" *Ransom*, 131 S.Ct. at 723-24 (citation omitted). The plain meaning of a statute should be conclusive except in those circumstances where "the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989) (citation omitted). The interplay between Section 707(b)(2)(A)(ii) and Section 707(b)(2)(A)(iii) is "anything but plain." *In re Hardacre*, 338 B.R. 718, 725 (Bankr. N.D. Tex. Mar. 6, 2006) (noting that one source of confusion lies in the language used in Section 707(b)(2)(A)(ii)(I), which states: "[n]otwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts.") When a statute is ambiguous, the Court may look to the intention of the drafters and the overall statutory scheme. *United States v. Irvin*, 2 F.3d 72, 76 (4th Cir. 1993), *cert. denied*, 510 U.S. 1125, 114 S.Ct. 1086, 127 L.Ed.2d 401 (1994). "[A] provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme . . . because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law. *United Savings Assoc. of Tex. v. Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365, 371, 108 S.Ct. 626 (1988). "[I]f the statutory language gives rise to several different interpretations, we must adopt the interpretation which 'can most fairly be said to be imbedded in the statute, in the sense of being most harmonious with its scheme and with the general purposes that Congress manifested.' " *In re Arizona Appetito's Stores, Inc.*, 893 F.2d 216, 219 (9th Cir.1990)(*quoting United States v. 594,464 Pounds of Salmon*, 871 F.2d 824, 827 (9th Cir.1989)).

9

The Supreme Court analyzed the means test in *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 131 S. Ct. 716, 722, 178 L. Ed. 2d 603 (2011) and held that a Chapter 13 debtor may not take the IRS "Ownership Cost" deduction when the debtor owns the vehicle free and clear of any encumbrances. *Id.* at 726.  In making its determination, the Court looked to the Collection Financial Standards which instruct that, in the tax-collection context, "[i]f a taxpayer has no car payment, . . . only the operating costs portion of the transportation standard is used to come up with the allowable transportation expense." *Id.* at 722[3].  The Supreme Court did exactly what the IRS Collection Financial Standards instructed.  The Court noted that an expense amount is 'applicable' within the plain meaning of the statute when it is "appropriate, relevant, suitable, or fit." *Id.* at 724. An expense is "appropriate" to a debtor "only if the debtor will incur that kind of expense during the life of the plan." *Id.* The Court noted that "[i]f a debtor will not have a particular kind of expense during his plan, an allowance to cover that cost is not 'reasonably necessary' within the meaning of the statute." *Id.* at 725. The Court held that the statute calls for an individualized determination and that identifying applicable expense amounts "requires [the Court to look at the] financial situation of the debtor and [ask] whether a National or Local Standard table is relevant to him." *Id.* at 724. Because the debtor owned the vehicle free of any debt, he would not have the expense during the plan and "an allowance to cover that cost is not 'reasonably necessary'" under § 1325(b)(2). *Id.* at 726.  The Court held that its interpretation was consistent with the intent of Congress in enacting BAPCPA because "Congress designed the means test to measure debtors' disposable income and, in that way, to ensure that [they] repay creditors the maximum they can afford." *Id.* at 725 (citing

---

[3]  The Supreme Court endorsed the use of the IRS guidelines and stated "although the statute does not incorporate the IRS guidelines courts may consult this material in interpreting the National and Local Standards. *Ransom*, 131 S.Ct. at 726.

H.R.Rep. No. 109-31, pt. 1, p. 2 (2005)). For the means test to "reflect a debtor's ability to afford repayment," a debtor "should be required to qualify for a deduction by actually incurring an expense in the relevant category." *Id.* at 725. Relying on the IRS Guidelines, the Court found that since the debtor owned his vehicle outright he incurred no expense in the "Ownership Costs" category and that expense amount was therefore, not "applicable to him." *Id.* at 726.

As to the specific circumstance of when a debtor's secured payments *exceed* the Local Standards, the Supreme Court stated: "[i]f a debtor's actual *expenses* exceed the amounts listed in the tables, for example, the debtor may claim an allowance only for the specified sum, rather than for his real expenditures." *Id.* at 727. Although, this exact issue was not before the Court in *Ransom*, this language is strongly persuasive and most instructive to this Court in making its determination. This interpretation is also the most logical in order to carry out the intention of Congress, that those who can pay more, should.[4]

The Debtors contend that because 11 U.S.C. § 707(b)(2)(A)(I) provides that when calculating the debtor's ability to pay unsecured creditors, the debtor's "current monthly income" is to be "reduced by the amounts determined under clauses (ii), (iii), and (iv)" that debtors are entitled to take the higher deduction under either § 707(b)(a)(A)(ii) or § 707(b)(2)(A)(iii). The clear language in *Ransom* leads this Court to no other conclusion that Congress could not have intended this

---

[4]In this case, Congress has made a judgment that for these Debtors, a Housing ownership expense of $885.00 is the appropriate reasonably necessary expense, even though the actual home payment is $1,357.67. To prevent abuse, the lesser of the Housing ownership expense or the actual payment should be deducted. Congress has made the value judgment on what the reasonably necessary expenses should be. Under the Debtors' argument, the Debtors could deduct the higher actual home payment, no matter how high. Surely Congress did not intend such a senseless result. Requiring the Debtors to take the lesser amount forces the Debtors to consider whether their Housing ownership expense is too high for their income and may require an adjustment by moving to a less expensive home, and/or selling or abandoning their residence.

11

language to mean that an above median income debtor is allowed to deduct the higher of the IRS Standard or the actual monthly mortgage payment, when the expense amount is not reasonably necessary.

The Court holds that the home and vehicle allowances serve only to operate as a "cap" on the amount the Debtors may deduct, when their average monthly secured home and vehicle payments *exceed* the Standard amounts. If the Debtors wish to deduct additional amounts the Debtors must show that such deduction is reasonably necessary, and as a "special circumstance" under 11 U.S.C. § 707(b)(2)(B). The dicta in *Ransom* clearly requires that the Debtors be limited to the Local Standard of $885.00 for their mortgage payment. Therefore, on Line 25B(a), the entry should be $885.00 and the entry on Line 25B(b) should be zero. As the appropriate expense deduction has been taken on line 25B, no secured debt deduction should then be taken on Line 47(b), as such would mean the deduction is taken twice.  Line 25B represents expenses, not debts. Likewise, none of the secured debt on Line 47(b) can double as expenses on Line 25B.

## II. Debtors' Monthly Car Payment of $162.38 is *Less Than* the IRS Local Car Ownership Standard of $517.00.

The Debtors make a monthly payment of $162.38, based on a claim secured by their vehicle. This amount is less than the IRS Local Standard for Car Ownership of $517.00.  The Debtors nevertheless take a deduction on Line 28 in the amount of $354.62 and a deduction on Line 47(a) in the amount of $162.38, for a total deduction of $517.00.  The issue of whether a debtor is only entitled to take a deduction of his actual monthly payment verses the Local Standard was not addressed by the Supreme Court in *Ransom*, but the *Ransom* analysis is instructive. *Ransom*, 131

12

S.Ct. at 727 n.8 (declining to resolve this particular issue because the debtor incurred no ownership expense at all and the expense was not applicable to him in the first instance)

The Court begins its analysis by asking the same questions that the Supreme Court asked in *Ransom*. Is the Ownership Cost deduction applicable to the Debtors? Yes, as the Debtors do incur a car payment of $162.38. What expense then is applicable to the Debtors? *Ransom* provides "[t]he key word in this provision is 'applicable': *A debtor may claim not all, but only "applicable" expense amounts listed in the Standards*." *Ransom*, 131 S.Ct. at 724 (emphasis added). Whether a debtor may claim the Ownership Cost deduction accordingly turns on whether that expense amount is "applicable" to him. *Id.* "The statute underscores the necessity of making such an individualized determination by referring to '*the debtors* applicable monthly expense amounts.'" *Id.* (citing 11 U.S.C. § 707(b)(2)(A)(ii)(I)). The Court finds the Debtors may claim not all, but only the "applicable" expense amounts listed in the Standards. The vehicle expense amount of $162.38 is applicable to the Debtors, because that is the amount the Debtors actually expend per month for their vehicle.[5]

---

[5]Such a finding is totally consistent and logical with the holding in *Ransom*.

Post-*Ransom*[6], bankruptcy courts have come to different conclusions when considering the issue of "whether an above median income debtor may claim the full amount of the deductions under the IRS's National and Local Standards when the debtor has expenses which are lower than the amounts listed in the Standards." *In re Daniel*, 2012 WL 3322438 at *2 (Bankr. M.D. Ala. 2012) (finding that debtors shall deduct the lesser of the IRS Local Standard allowance or their actual costs); *In re O'Neill Miranda*, 449 B.R. 182, 196 (Bankr. D.P.R. 2011) (finding that debtors "pursuant to Section 707(b)(2)(A)(ii)(l) may deduct the full amount of applicable expenses under the IRS's National and Local Standards if they provide evidence to the [t]rustee that they have some expense for that particular category, irrespective of the fact that their actual expenses for certain categories are lower"); and *In re McHenry*, 2011 WL 4625385 at *6 (Bankr. D. Mont. 2011) (finding that payments to secured creditors are not limited by the Internal Revenue Service standards).  The Court agrees with the *Daniel* decision of the Bankruptcy Court for the Middle District of Alabama and finds this decision is commonsensical and a logical extension of *Ransom*. The issue before the *Daniel* court was "whether, in determining projected disposable income, the

---

[6]Pre-*Ransom* decisions include: *Musselman v. eCast Settlement Corp.,* 394 B.R. 801, 815 (2008) (finding that a debtor who has a housing or transportation expense, may include the full amount of the IRS Local Standards for those expense categories, even when his actual expenses are less than those amounts); *In re Phillips*, 382 B.R. 153, 165 (Bankr. D. Mass. 2008) (finding that "an above median debtor's plan that proposes to pay the debtor's disposable income employing the National and Local Standards in computing expenses in accordance with § 1325(b)(3) might still be objectionable in extraordinary circumstances under § 1325(a)(3) on the basis of lack of good faith."); *In re Rezentes*, 368 B.R. 55, 62 (Bankr. D. Haw. 2007) (noting that Congress' decision to use the IRS standards within the Code suggests that courts should look to how the IRS would apply the standards in similar circumstances, and holding that for purposes of calculating projected disposable income, debtors shall deduct the lesser of the local standard housing expense or their actual housing expenses); and *In re Slusher*, 359 B.R. 290, 309 (Bankr. D. Nev. 2007) (nothing that in referring to the IRS Standards "it would be quite odd if Congress intended to preclude courts from examining the context in which the authoring agency, the IRS, used and employed those standards.").

debtors may deduct the full IRS Local Standard allowance for vehicle ownership and operation when their actual costs are less than the allowance." *In re Daniel*, 2012 WL 3322438 at * 1. There, the IRS Local Standard allowance for vehicle ownership and operation was $580.00 and the debtor's actual cost was $325.00. *Id.* The court looked to *Ransom* and *Lanning* in making its determination and found that in "determining whether the claimed transportation deduction is presumptively correct, the court may consider 'changes that have occurred in the debtor's financial circumstances as well as the debtor's actual income and expenses.'" *Id.* at 2. The court concluded that the trustee rebutted the presumption by producing uncontroverted evidence that the debtor's actual expenses were less than the standard and that the actual expenses were not anticipated to change during the course of the plan. *Id.* When addressing the debtors' argument that *Ransom* was distinguishable because the debtor in *Ransom* had no ownership expense, but the debtors in the case did, the court stated the distinction was one without a difference. *Id.* The court pointed out that the debtors' argument would produce an anomalous result, in that debtors with a "nominal ownership expense would be entitled to claim the entire allowance while debtors with no ownership expense could claim nothing." *Id.* The Court agrees with the *Daniel* court in that the *Ransom* decision is directly on point with the instant case. The fact that the debtor in *Ransom* had no ownership expense is a distinction without a difference. The Supreme Court could not have intended that debtors with a nominal ownership expense be entitled to claim the entire allowance while debtors with no ownership expense can claim nothing.

Because Congress intended the means test to approximate the debtor's reasonable expenditures on essential items, a debtor should be required to qualify for a deduction by actually incurring an expense in the relevant category. If a debtor will not have a particular kind of expense

during his plan, an allowance to cover that cost is not "reasonably necessary" within the meaning

of the statute.

Footnote 5 in *Ransom* gives further instruction:

[t]his interpretation also avoids the anomalous result of granting preferential treatment to individuals with above-median income. Because the means test does not apply to Chapter 13 debtors whose incomes are below the median, those debtors must prove on a case-by-case basis that each claimed expense is reasonably necessary. See §§ 1325(b)(2) and (3). If a below-median-income debtor cannot take a deduction for a nonexistent expense, we doubt Congress meant to provide such an allowance to an above-median-income debtor—the very kind of debtor whose perceived abuse of the bankruptcy system inspired Congress to enact the means test.

*Ransom*, 131 S.Ct. at 725 n.5.

This clear language in *Ransom* can lead this Court to no other conclusion. In *Ransom*, the

Supreme Court relied on the IRS Guidelines and determined that if a debtor has no car payment, .

. . the debtor may not deduct the Car Ownership expense. In accordance with *Ransom*, this Court

will rely on the IRS Guidelines which allow for the "full ownership standard amount, or the amount

actually claimed and <u>verified</u> by the taxpayer, *whichever is less*." IRM 5.15.1.9 (10-02-2012),

Section 1.B (italics added). Therefore, the Court holds the Debtors may claim not all, but only the

"applicable" expense amounts listed in the Standards.[7] Therefore, on Line 28(b) the deduction

should be $162.38 and the deduction on Line 28(a) should be zero. As the appropriate deduction

has been taken on Line 28, no deduction should then be taken on Line 47(a) as such would mean the

deduction is taken twice. The analysis by the Supreme Court in Footnote 5 further bolsters this

---

[7] In *Ransom*, not having to make a vehicle payment meant the allowance was not a reasonably necessary expense. Here, having a vehicle payment lower than the national standard is only a "reasonably necessary expense" for the Debtors based on the *Ransom* analysis regarding what amount is "reasonably necessary" and applicable to the Debtors. Therefore, the actual payment of $162.38 is not a secured debt for Line 47(a) pursuant to 11 U.S.C. § 707(b)(2)(A)(iii).

Court's holding, that a below median debtor should get to deduct the actual payment, rather than the higher local standard.

### III. Sections 707(b)(2)(A)(iii) and 1325(b)(3).

Section 707(b)(2)(A)(iii) must be interpreted under the admonition of §1325(b)(3) that "amounts reasonably necessary to be expended . . . shall be determined in accordance with" the means test.  11 U.S.C. § 1325(b)(3).  The phrase "in accordance with" does not mean strict conformance, but only as defined by Black's Law Dictionary as "in a manner not repugnant to or in conflict or inconsistent therewith."  Black's Law Dictionary 34 (Rev. 4th ed. 1968), *citing City of Norfolk v. Norfolk Landmark Publishing Co.*, 95 Va. 564, 28 S.E. 959 (1898); *See also New York Pub. Interest Research Grp., Inc., v. New York State Dep't of Ins.*, 66 N.Y. 444, 449, 488 N.E. 2d 466, 469-70 (1985) ("the phrase has generally been construed to require not identicality of result but only reasonably or just correspondence").

Further in §707(b)(2)(A)(ii)(I) the language "[n]otwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts," the reference to "this clause" is subparagraph (A).  The amounts claimed for car ownership or lease expenses in Line 28(b) ($162.38) and the amounts claimed for housing expenses on Line 25B(a) ($885.00) are expense allowances, not payments for debts which are referred to in 11 U.S.C. § 707(b)(2)(A)(iii).  Taking the deductions again on Line 47 would be a "senseless result" and would be absurdly inconsistent with congressional intent.[8]  *See Hamilton v. Lanning*, 560 U.S. 505, 520 (2010) (noting

---

[8]Taking the actual secured house payment and vehicle payment as a deduction on Line 47 would not be a "reasonably necessary expense," when the Housing allowance and vehicle Ownership allowance have already been taken on Lines 25B(a) and 28.

that a mechanical reading of Section 1325 would produce senseless results that Congress could not have intended).

In addition, subparagraph (iii) refers to the debtor's average monthly payments on account of secured debts. This subparagraph does not reference expenses, but only monthly payments. This Court believes subparagraph (iii) is better utilized for computation of the plan payment for the Chapter 13 debtor and is completely consistent with the requirement of §1325(a)(5)(B)(iii) requiring periodic payments of fully secured claims to be in equal monthly amounts. The Court believes the secured debts referred to in § 707(b)(2)(A)(iii) are secured debts excluding Housing standards and Car Ownership standards, which were determined on Lines 25B and 28 as Local Expense Standards, not secured debt payments.[9] Accordingly, this Court finds the Debtors are only entitled to deduct from their Current Monthly Income the lesser of their actual home and vehicle payments or the corresponding Local Standards promulgated by the IRS. Should the Debtors wish to claim an amount higher than the IRS Local Standards, the Debtors can request higher than allowed house expense payment and/or car expense payment by virtue of proving special circumstances pursuant to §707(b)(2)(B), where the Debtors could demonstrate the applicable need.

While this interpretation is inconsistent with the Form B22C, it would not be the first time Form B22C has been found to be inconsistent with the Code. *See In re Wiegand*, 386 B.R. 238, 241-42 (B.A.P. 9th Cir. 2008); *In re Hoffman*, 511 B.R. 128 (Bankr. D. Minn. 2014); *In re Harkins,* 491 BR 518 (Bankr S. D. Ohio 2013); *In re Arnold*, 376 B.R. 652 (Bankr. M.D. Tenn. 2007); and *In re Sharp*, 394 B.R. 207 (Bankr. C.D. Ill. 2008). Form B22C is a form, and when inconsistent with the

---

[9]The Trustee recommends that the Debtors' monthly housing and car payment be accounted for on Line 47. So long as no duplicate deduction is taken the deduction amounts are the same and this is sufficient. This is however further evidence that B22C should be modified to comply with the statute.

Code, the Code controls, not the form. *See Harman v. Fink* (*In re Harman*), 435 B.R. 596, 599 (8th Cir. BAP 2010) ("The applicable form in this case is the B22C form. However, it is ultimately the statute, not the form, which determines the applicable commitment period. The official forms 'shall be construed to be consistent with [the Federal Rules of Bankruptcy Procedure] and the Code.' Fed. R. Bankr. P. 9009"); *See also In re Harkins,* 491 BR 518(Bankr S. D. Ohio 2013); *Morse v. Perrotta* (*In re Perrotta*), 406 B.R. 1, 8 (Bankr. D.N.H. 2009); *In re Arnold*, 376 B.R. 652 (Bankr. M.D. Tenn. 2007); and *In re Stoecker*, 179 F.3d 546, 552 (7th Cir. 1999).

Form B22C needs to be modified to comport with the Bankruptcy Code. Line 28 for claim of transportation ownership/lease expense must be modified so that the holding in *Ransom* requires entry of no expense if the debtor has no car payment or lease payment. Likewise, if a debtor has a monthly transportation ownership or lease expense, Line 28 on Form B22C should be modified to require debtor to list the lesser of the amount of the lease or vehicle payment or the Car Ownership expense. Also on Line 25B, the debtor should claim the lesser of the amount of the Housing standard expense and the actual monthly payment. Further, Lines 47 and 48 should not generate duplicate entries for a house ownership payment or allowance and a car ownership payment or allowance. Allowing an additional secured debt deduction on Lines 47 and 48 would be absurd and produce a senseless result, and not in keeping with the intent of Congress that those with ability to pay their creditors more should do so. *See Ransom*, 131 S. Ct. at 725 (noting that the Supreme Court in *Hamilton v. Lanning*, 560 U.S., at 520., rejected an interpretation of the Bankruptcy Code that "would produce [the] senseless resul[t]" of "deny[ing] creditors payments that the debtor could easily make.").

### IV. <u>Use of the Internal Revenue Manual.</u>

The Debtors contend that the Trustee's incorporation of the Internal Revenue Manual in an effort to add language to § 707(b)(2)(A) and (B) is unavailing because the Bankruptcy Code only utilizes the standard allowance numbers issued by the IRS. In *Ransom*, the Supreme Court clearly stated it was appropriate for courts to the look to the IRS Manual for guidance when interpreting the National and Local Standards. The Supreme Court elaborated in *Ransom* that instead of authorizing debtors to take deductions in all listed categories,

> Congress established a filter: A debtor may claim a deduction from a National or Local Standard table (like "[Car] Ownership Costs") if but only if that deduction is appropriate for him. And a deduction is so appropriate only if the debtor has costs corresponding to the category covered by the table—that is, only if the debtor will incur that kind of expense during the life of the plan. The statute underscores the necessity of making such an individualized determination by referring to '*the debtor's* applicable monthly expense amounts, § 707(b)(2)(A)(ii)(I) (emphasis added)—in other words, the expense amounts applicable (appropriate, etc.) to each particular debtor. *Identifying these amounts requires looking at the financial situation of the debtor and asking whether a National or Local Standard table is relevant to him.*

*Ransom*, 131 S.Ct. at 724 (emphasis added). The Supreme Court endorsed the use of the IRS guidelines and said, "although the statute does not incorporate the IRS guidelines, courts may consult this material in interpreting the National and Local Standards."  *Ransom*, 131 S.Ct. at 726. This Court gives great weight to these instructions by the Supreme Court for use of the IRS guidelines.  As in *Ransom*, if a below-median-income debtor can only take an actual car ownership expense or payment, one doubts Congress meant to provide a higher local standard IRS allowance to the above median income debtor—the very kind of debtor whose perceived abuse of the bankruptcy system inspired Congress to enact the means test.  Use of the Internal Revenue Manual ("IRM") is totally consistent with the Supreme Court's analysis of the adjective "applicable," when

determining which deduction to take.  An applicable expense is appropriate, relevant, suitable or fit depending on each debtor's circumstance.  To further congressional intent, the applicable expense (ie., the lesser of the national or local standard for housing or transportation ownership expense or the actual payment), is what is applicable in this case to determine what ability the Debtors have to repay their creditors.

With respect to the Car Ownership allowance, the IRM similarly allows for "the full ownership standard amount, or the amount actually claimed and <u>verified</u> by the taxpayer, *whichever is less.*" IRM 5.15.1.9 (10-02-2012), Section 1.B (italics added). As to the Housing allowance, the IRM explains, "Taxpayers are allowed the standard amount for housing and utilities or the amount actually spent, *whichever is less.*  If the amount claimed is more than the total allowed by housing and utilities standards, the taxpayer must provide documentation to substantiate those expenses are necessary." IRM 5.15.1.9 (10-02-2012), Section 1.A (emphasis added).  Use of the IRM as a guide as endorsed by the Supreme Court carries great weight in the consideration of the issue before this Court and gives this Court no reason to believe that the Supreme Court would not consult the IRM under the facts of the present case.

## V. Abuse under Chapter 7.

In addition, the Court notes in the Chapter 7 context, even if a Chapter 7 debtor passes the means test, the court may still dismiss or convert the case, if it finds that the granting of relief under Chapter 7 would be an abuse of Chapter 7. In the case *In re Crink*, 402 B.R. 159 (Bankr. M.D.N.C. 2009), the debtors "passed" the means test, but the Bankruptcy Administrator sought dismissal under 11 U.S.C. § 707(b)(3)(B), based on the totality of the debtor's financial circumstances. *Id.* at 165.

The Debtors objected to the admissibility of any evidence related to their ability to pay their creditors and argued that BAPCPA restricts any analysis of their ability to pay to Section 707(b)(2). *Id.* at 166.  Therefore, they argued their ability to pay could not be considered under Section 707(b)(3). *Id.*  The court looked at the plain language of the statute and found that if a "court is to examine the totality of a debtor's financial situation, as it must, then it is required to consider the debtor's ability to pay." *Id.* at 167. The court found that the debtors had the ability to repay a significant portion of their debts. In making that determination the court noted that the debtors' housing expenses were excessive, and they could obtain alternative housing for much less.  *Id.* at 172. Surely, where the court found an excessive house payment to be abusive under Chapter 7, the debtor should not be able to convert to Chapter 13 and then claim the full house payment previously determined to be abusive under the Section 707(b)(2) analysis!

## VI.  <u>Bankruptcy Courts May Consider Schedule I, Schedule J, or Other Pertinent Evidence to Capture Known or Virtually Certain Changes to Disposable Income.</u>

Some may say that allowing a debtor to deduct on B22C the lesser of the Local Standards for Car Ownership and Housing expenses,  means B22C becomes nothing more than glorified Schedules I and J.  Not so, as B22C now might include, as here, the lower national housing standard of $885.00 instead of the actual house payment of $1,357.67 found on Schedule J.[10] Such a reading prohibits a debtor from claiming a higher than reasonably necessary house payment, when Congress intended to encourage those that have the ability to pay more to creditors to do so.  In addition, the

---

[10]  On the Debtors' Schedule J, the actual house payment is included in the proposed Plan payment or the amount left when subtracting the expenses on Schedule J from income on Schedule I as the Local Rules for the Eastern District of North Carolina require the mortgage payment inclusion in the plan payment.

calculation of disposable income (a backward looking approach) is only one factor a court may review in determining projected disposable income (a forward looking approach) through a totality of the circumstances approach.  *Pliler v. Stearns*, 747 F.3d 260, 267 (4th Cir. 2013) (noting the bankruptcy court may consider Schedule I, Schedule J, or other pertinent evidence to capture "known or virtually certain" changes to disposable income, as the Supreme Court did in *Lanning*, 560 U.S. at 511.).

The disposable income of B22C is only one factor the Court should consider when determining projected disposable income, which is a forward looking approach.[11]   B22C is a

_____

[11]The Debtors contend that the Trustee's arguments are not consistent with the Code because he seeks to calculate a debtor's "disposable income" based on his or her actual expenses and this is what Congress intended to eliminate with the implementation of a "strict statutory formula" in BAPCPA.   The Supreme Court has made clear that the BAPCPA provisions were not intended by Congress to overhaul the administration of Chapter 13 cases. *Hamilton v. Lanning*, 560 U.S. 505, 516 (2010) (noting that "Pre-BAPCPA bankruptcy practice is telling because we 'will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure."(citations omitted)). Specifically, Congress did not intend to alter the pre-BAPCPA practice whereby bankruptcy courts determined projected disposable income by reference to Schedules I and J, but also considered known or virtually certain changes to the debtor's income or expenses when projecting disposable income. By referencing the IRS standards in 11 U.S.C. § 707(b)(2)(A)(ii)(I), with which to compare actual expenses, Congress was setting limits on expenses, which prior to BAPCPA, allowed trustees and judges to use more discretion to determine which expenses were "reasonable and necessary."  As the Fourth Circuit pointed out in *Pliler v. Stearns*, 747 F.3d 260, 267 (4th Cir. 2014) "[w]e do not doubt a bankruptcy court's ability to consider Schedule I, Schedule J, or other pertinent evidence to capture 'known or virtually certain' changes to disposable income: After all, the Supreme Court itself did so in *Hamilton v. Lanning*, 560 U.S. 505, 508 (2010)."

"Under the pre-BAPCPA Bankruptcy Code, determining what expenses were 'reasonably necessary' under this test required judges to make significant value judgments, leading to a wide diversity of rulings on whether particular expenses were justifiable."  *In re Slusher,* 359 B.R. 290, 294 (Bankr. D. Nev. 2007) (citing *In re Woodman*, 287 B.R. 589, 592–593 (Bankr.D.Me.2003) (tobacco expense of $240 each month was reasonable and necessary)*, aff'd, Evergreen Credit Union v. Woodman*, 379 F.3d 1 (1st Cir.2004); *Univest–Coppell Village, Ltd. v. Nelson*, 204 B.R. 497, 500 (E.D. Tex.1996) (private school tuition of $395 each month was not reasonably necessary)). Congress did not intend to alter the practice whereby bankruptcy courts determine projected disposable income by referencing Schedules I and J and the practice where courts consider known or virtually certain changes to debtor's income or expenses when

backward looking approach based on the current monthly income of the debtor six months prior to filing. *See Hamilton v. Lanning*, 560 U.S. 505, 508, 130 S.Ct. 2464, 177 L.Ed. 2d 23 (2010). The Supreme Court in *Hamilton v. Lanning*, defined projected disposable income as income to be received beginning on the date the first payment is required to be made, and the Court can take into account "known or virtually certain changes in the debtors income" at the time of confirmation. *Id.* at 513. Here, we know that the debtor ONLY pays $162.38 for a car payment, which is known for the life of the plan, and that will be debtor's expense. Likewise, we know that the housing standard expense that is reasonably necessary and not an abuse is $885.00. This is known at the time the first plan payment is due. *Pliler*, 747 F.3d. at 266 (stating that "[W]e recognize that projected disposable income and disposable income are, even simply on their face, not identical, with disposable income based on a debtor's past and projected disposable income being a 'forward looking' concept that may account for 'known or virtually certain' changes to a debtor's income or expenses."); *See also Morris v. Quigley*, 673 F.3d 269, 274 (4th Cir. 2012) (relying on *Lanning* and holding that a debtor's projected disposable income must reflect debtor's intention to surrender vehicles on which she had been making secured debt payments and which had impacted her disposable income calculation).

The Debtors do have some flexibility and can request higher than allowed house expense payment and/or car expense payment by virtue of the special circumstances pursuant to

---

projecting disposable income. The discretion that Congress intended to eliminate, was the significant value judgment which lead to a wide diversity of rulings. For example, pursuant to this holding, the Court ONLY has discretion to select the lesser of the actual expense of the housing/transportation ownership or lease costs AND the local standards for Housing/transportation Ownership Cost or lease expense deduction. Unless special circumstances are shown, the discretion and varying results on Housing deductions and car Ownership Cost deductions are eliminated.

§707(b)(2)(B), where the debtor could demonstrate the need for a larger house or that the car only has one more payment and is in a state of disrepair.

## CONCLUSION

Therefore, based on the reasoning set forth in the Supreme Court decisions *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 131 S. Ct. 716 (2011) and *Hamilton v. Lanning*, 130 S.Ct. 2464, 177 L.Ed. 2d 23 (2010) and BAPCPA's text, context and purpose, this Court holds that the Local Standard expense amount for Car Ownership costs and Housing costs is only applicable to the Debtors to the extent of the lesser of the actual payment or the IRS allowances for Housing and Car Ownership, when calculating disposable monthly income in accordance with §707(b)(2)(A) and (B) and §1325(b)(3).[12]

The Debtor is granted seven (7) days to file an amended Form B22C to comply with this order and opinion. If not filed within seven (7) days, then the Trustee's motion to dismiss is **GRANTED**.

**SO ORDERED.**

### END OF DOCUMENT

---

[12]With these computations, Line 56 on B22C is $4,996.78 with the resulting Line 59 - Monthly Disposable Income of $89.72. Therefore, the Debtors have $89.42 of monthly disposable income that should be paid to unsecured creditors. In formulating a plan for confirmation, the Trustee should take this figure into account, along with Schedule I and Schedule J, and any other facts relevant to the totality of the circumstances to produce projected disposable income. With no other changes for "special circumstances" the Court estimates a confirmable plan for Harris would be $1,953.00 per month for sixty (60) months, which would generate a dividend of 14.3% to unsecured creditors rather than the zero percent payment originally proposed.